# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| PHIL H. WHITE, SR. | CIVIL ACTION NO. 05-0272 |
| VS. | MAGISTRATE JUDGE METHVIN<br>BY CONSENT OF THE PARTIES |
| COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION | |

*MEMORANDUM RULING*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the court concludes that there is substantial evidence to support the Commissioner's finding. Accordingly, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED**.

*Background*

Born on July 13, 1965, Phil H. White, Sr. ("White") is currently 41 years old. White has a high school education and attended college for almost two years.[1] He has worked in the past as a delivery driver, security guard, and shipping and receiving clerk. On April 4, 2002, White applied for disability benefits effective February 24, 2000, after an automobile accident that caused back problems and headaches.[2] The application was denied initially and on reconsideration. Following an administrative hearing, an administrative law judge (ALJ) determined that White had the residual functional capacity to perform light level work which existed in substantial numbers, and therefore he was not disabled.[3] White appealed the decision

---

[1] Tr. 56.

[2] Tr. 78, 291.

[3] Tr. 23-29.

to the Appeals Council, which denied his request for review, making the ALJ's decision the final decision of the Commissioner from which White now appeals.[4]

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

A person applying for disability and/or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act, 43 U.S.C. §423(d). Initially, the burden is on the claimant to show that he cannot perform his previous work. Fraga v. Bowen, 810 F.2d 1296, 1301 (5th Cir.1987); Anthony, 954 F.2d at 293. Once the claimant satisfies his initial burden, the Secretary then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is therefore not disabled. Fraga, 810 F.2d at 1301-

---

[4] Tr. 7-10.

1302; Johnson v. Bowen, 864 F.2d 340, 344 (5th Cir.1988).  In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the case at bar, the ALJ concluded that White's "degenerative disc disease in the lumbar spine, post-traumatic low back pain syndrome, cervical strain/sprain, suspected meniscal tear in his left knee" were severe impairments.[5]  The ALJ assessed White's residual functional capacity ("RFC") and concluded that he could perform the full range of light exertional work.  Applying the Medical Vocational Guidelines, the ALJ concluded that White was not disabled because jobs exist that he could perform.

### *Assignment of Errors*

White alleges the following errors: 1) the RFC finding is not supported by substantial evidence; and 2) the ALJ erred in applying the Medical Vocational Guidelines.

---

[5] Tr. 26.

*Findings and Conclusions*

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. §405(g), the court concludes that the Commissioner's findings and conclusions are supported by substantial evidence in the record.

**Administrative Record**

**Medical records:** On March 20, 2000, White was examined by Dr. Jeffrey Friedlander, a neurologist.[6] White told Dr. Friedlander that he had been in involved in an automobile accident on February 24, 2000 and since that time he had suffered from headaches, neck pain, mid- and low-back pain. Dr. Friedlander diagnosed White with post-traumatic episodic headaches, post-traumatic bilateral greater and lesser occipital neuralgia, acute cervical, thoracic, and lumbar strain/sprain. White was prescribed a TENS unit and Vioxx and Lortab. Dr. Friedlander referred White for a MRI of the cervical spine, which was normal.[7] A MRI of the lumbar spine on March 30, 2000 showed "disc dehydration with a small left paracentral disc herniation noted at the L4-5 level. A Schmorl's node is demonstrated within the superior end-plate of the S1 vertebral body."[8]

On May 1, 2000, White advised that he had been involved in two more car accidents on April 15 and April 22, 2000.[9] White continued to complain of back pain and headaches. On May 24, 2000, White no longer complained of headaches and Dr. Friedlander's diagnosis did not

---

[6] Tr. 214-217.

[7] Tr. 212.

[8] Tr. 211.

[9] Tr. 195.

include "post traumatic headaches."[10] A MRI of the cervical spine on June 23, 2000 showed disc bulging at C5-6 and C6-7.[11] A MRI of the lumbar spine show disc bulging at L4-5.[12]

From April 19, 2000 to August 28, 2000, White was treated by Dr. Robert Nucci, a spine surgeon, for back pain.[13] Dr. Nucci diagnosed White with "lumbar strain with underlying lumbar disk herniation at L4/5 with symptoms worsening after the accident of April 22, 2000."[14]

On November 29, 2000, White was examined by Dr. Frank Gomes, a neurosurgeon.[15] White had moderately decreased range of motion in his cervical spine and severely restricted range of motion in his thoracolumbar spine. Dr. Gomes recommended that White undergo a lumbar discectomy at L4-5. Dr. Gomes noted that White "should avoid repetitive lifting over ten to fifteen pounds, repetitive bending, pulling, pushing, prolonged sitting or standing, or high impact activities."[16]

On February 14, 2001, a residual functional capacity assessment was completed by a non-examining physician at the request of Disability Determination Services ("DDS"), who concluded that White could perform the physical demands of light work.[17]

---

[10] Tr. 190-191.

[11] Tr. 188.

[12] Tr. 187.

[13] Tr. 160.

[14] Tr. 160.

[15] Tr. 182-184.

[16] Tr. 184.

[17] Tr. 218-225.

From January 31, 2002 to June 10, 2002, White was treated by Dr. Dunk Ellis, a family practicioner, for low back pain.[18]

On July 24, 2002, White was examined by Dr. Robert Cobb, an internist, at the request of DDS.[19] White complained of back pain, with the pain being worse in the upper lumbar and lower thoracic areas. Dr. Cobb noted that White's range of motion was intact, no spasm was evident, but he did have tenderness in the lumbar region. Dr. Cobb diagnosed White with "post-traumatic low back pain syndrome with documented L4-5 disc."[20]

An x-ray of the lumbar spine on July 25, 2002, showed mild L4-5 disc diesease and mild degenerative changes.[21]

White was treated by Dr. Charles Allen from July 11 to October 17, 2002 for back pain. From December 3 to December 18, 2002, White saw Dr. John McCloskey, a neurosurgeon.[22] Dr. McCloskey diagnosed White with chronic post-traumatic low back syndrome and referred him to a physical therapist, Ruth Bosarge.[23] The physical therapist noted that although White could not return to his previous employment, he should undergo vocational training in order to obtain other employment.[24]

---

[18] Tr. 231-239.

[19] Tr. 226-228.

[20] Tr. 228.

[21] Tr. 229.

[22] Tr. 257-262.

[23] Tr. 261-262.

[24] Tr. 260.

On January 24, 2003, White was examined at University Medical Center ("UMC") in Lafayette, with complaints of left knee pain following a fall.[25] An x-ray of the left knee was normal.[26] On July 16, 2003, a MRI of the left knee showed small joint effusion, degenerative change, and possible partial disruption of the anterior cruciate ligament ("ACL").[27] On June 9, 2004, White underwent ACL reconstruction to repair a left ACL tear.[28]

**Administrative hearing**: White testified that he spends most of his days watching television. His children, ages 16, 15, and 13 do the housework and grocery shopping. White testified that when his back goes out on him, he has to stay off his feet for two to three weeks. His left knee sometimes gives out on him. His pain is everywhere and it affects his bladder control.[29] He drives twice a week. He can alternate sitting and standing for a couple of hours but then he has to lay down to rest, and sometimes he can return to sitting and standing after resting.[30]

## Severity Finding

White maintains that the ALJ erred in failing to find that his headaches were a severe impairment.

A claimant has the burden to establish disability under the Act. 20 C.F.R. §404.1512. To meet this burden, the claimant must furnish medical and other evidence of the existence of the

---

[25] Tr. 271.

[26] Tr. 274.

[27] Tr. 265.

[28] Tr. 277.

[29] Tr. 60.

[30] Tr. 65.

disability. 42 U.S.C. § 423(d)(5)(A). It is the claimant's burden to demonstrate that she suffers from a severe impairment or combination of impairments. 20 C.F.R. §404.1520(c).

Under Fifth Circuit jurisprudence, "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), *citing* Estran v. Heckler, 745 F.2d 340, 341 (5th Cir.1984). See also Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984); Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir.1984); Davis v. Heckler, 748 F.2d 293, 296 (5th Cir.1984). If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability. 20 C.F.R. §§ 404.1530, 416.930; Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir.1987).

In the instant case, the ALJ noted that although White was treated for migraine headaches, White did not indicate how the headaches limited his ability to work, but rather testified that he could work if he were only suffering headaches. The ALJ concluded, therefore, that White's headaches were "not severe for the reason that they do not significantly interfere with his ability to work."[31] The record shows that White only sought treatment for headaches briefly and his treating physician did not note headache problems after a few months of treatment. White has not pointed to, nor does the record contain, any evidence indicating that his headaches pose any limitations on his ability to work. Thus, substantial evidence supports the ALJ's finding that White does not have a severe impairment.

---

[31] Tr. 26-27.

Moreover, since the ALJ did not stop the disability analysis at Step 2, but instead addressed the medical evidence and the effect all of the impairments had on White's ability to work, White's contention has no merit. The Fifth Circuit has declined to extend the Stone decision to cases that were not decided at Step Two on the basis of non-severity. *See, e.g.*, Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987) (where ALJ concluded that appellant's hypertension was of "mild medical severity," and proceeded through the sequential evaluation to conclude at the fourth and fifth steps that the appellant could perform past relevant work and a full range of light work, the court held that the ALJ did not apply an incorrect severity standard at Step Two); Lopez v. Bowen, 806 F.2d 632, 634 n. 1 (5th Cir.1986) (because ALJ found some impairments to be severe, the ALJ did not apply an incorrect severity standard); and Nicholson v. Massanari, 2001 WL 564157, *1 (5th Cir. 2001) (unpublished) ("Moreover, the ALJ did *not* apply the wrong legal standard, because the decision to deny Nicholson benefits was *not* based on a finding of non-severity"). Accordingly, the ALJ did not err.

**Medical-Vocational Guidelines**

White maintains that because one of his physicians noted that he should avoid prolonged standing, he had a non-exertional limitation that precluded the use of the Medical-Vocational Guidelines. Additionally, White argues that because the vocational expert testified that White would be unemployable if his back problem precluded him from working two to three weeks a month, the ALJ erred in finding him not disabled.

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate

issue of disability is reserved to the Commissioner. The ALJ has discretion to determine the disabling nature of subjective complaints of pain, "at least where the medical evidence is inconclusive." Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).

Once a claimant establishes that he is unable to perform her previous work, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the economy. Western v. Harris, 633 F.2d 1204, 1206 (5th Cir. 1981); Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983); Taylor v. Bowen, 782 F.2d 1294 (5th Cir.1986). The Medical-Vocational Guidelines were established to allow the ALJ take administrative notice of the existence of jobs in the national economy when a claimant's residual functional capacity, age, education and previous work experience meet certain specified criteria. Use of the guidelines in appropriate cases has been approved by the United States Supreme Court. Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); Jones v. Heckler, 702 F.2d 616, 622 (5th Cir. 1983). Thus, the Commissioner is relieved in certain cases of the burden of calling a vocational expert to testify about a claimant's ability to perform other substantial gainful activity. However, when non-exertional limitations are shown, a disability decision cannot be made solely on the basis of the vocational guidelines. Martin v. Heckler, 748 F.2d 1027 (5th Cir.1984). 20 C.F.R. Chapter

> After reviewing the medical records, the ALJ concluded:
>
> Although the claimant alleges that he is unable to work, that is not found to be the case. The claimant suffers from impairments, which restrict his abilities to lift more than 20 pounds at a time, sit and stand for prolonged periods, and perform repetitive bending, pulling. However, within that framework, the claimant retains

> the capacity to perform a number of work-related tasks. Giving the claimant the benefit of the doubt and assuming that he is restricted to a degree, the undersigned finds that the claimant is able to perform essentially a full range of light work.
>
> * * *
>
> A consideration of factors outlined in Social Security Ruling 96-7p, which requires the undersigned to consider the effects of pain and other symptoms upon an individual's ability to work, supports a finding that the claimant is able to perform essentially a full range of light work. The claimant testified that he suffers significant pain. He testified that his pain medication gives him partial relief. He did not testify to any adverse side-effects. He testified to few daily activities, but his limitations seem to be self-imposed, given the fact that he documents that no doctor has requested that he restrict his activities. In an Activities of Daily Living Questionnaire completed by the claimant on December 21, 2000, he reported that he shopped, did laundry, drove for short periods, and cared for his three children, ages nine, twelve, and thirteen years old. Therefore, the undersigned finds that the claimant is capable of performing light work.[32]

The ALJ then turned to whether White could perform his previous work. The ALJ relied on the testimony of the vocational expert to conclude that he could not perform his previous work as security guard and delivery driver. Using the Guidelines as a framework, the ALJ concluded that there are significant jobs that exist for a person White's age, with his education level, and who can perform light work. The ALJ found, therefore, that White was not disabled.

White does not allege that the ALJ erred in finding that he could perform light work. Rather, White argues that the restriction from prolonged standing and sitting posed a non-exertional limitation that precluded the use of the Guidelines. Standing and sitting, however, are exertional limitations. 20 C.F.R. 404.1545(b). Thus, the ALJ's determination that White should

---

[32] Tr. 27. The "light work" category, in which White was found to be included, is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §404.1567(b). Additionally, the claimant must be capable of walking/standing at least 6 hours of an 8-hour day, while sitting may occur intermittently during the remaining time. Social Security Ruling 83-10, at p. 179. To be considered capable of performing the full range of light work, the claimant must be able to do substantially all of these activities.

not engage in prolonged sitting and standing did not create a non-exertional limitation that prevented the use of the Guidelines.

White also argues that the ALJ erred by using the Guidelines as a framework rather than relying on the testimony of the vocational expert. White relies on the following testimony:

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

Q. Ms. Hutchins, considering the claimant's work history and testimony he's given here today about his physical limitations, do you believe he would be able to return to any of his past employments?

A. If you want to look at it simply from an attendance standpoint, that if his back goes out approximately once a month and puts him in bed for two to three weeks, that's not going to allow anybody to maintain or sustain any employment no matter what the physical demands of it are.

Q. So the answer would be?

A. Not on a full-time sustained basis.

Q. Okay. Are there any jobs that occur in the national or regional economy that he would be able to do if you accept his testimony as credible?

A. No. My previous answer would be the same, even for sedentary work. It would be regardless of the actual physical demands of the job.[33]

White argues that the foregoing testimony "establishes that Plaintiff could not return to past relevant work, nor, according to the VE, did alternative or other occupations exist in which Plaintiff might engage on a full time basis."[34] This argument, however, fails to address the fact

---

[33] Tr. 71-72.

[34] Rec. Doc. 13 p. 9.

that the entire exchange was premised on the vocational expert assuming that White would be incapacitated for two to three weeks of every month. The ALJ did not find that White's testimony credible regarding the disabling nature of his back pain. A review of the record shows that White did not advise any of his doctors that he is unable to get out of bed due to back pain for two to three weeks of every month. Further, the medical records show that during some periods of time, White was being examined by doctors twice a month, which would mean that he would have been experiencing episodes of back pain that required bed rest during some of those examinations, and it would seem that he would have mentioned this to the examining physician. Additionally, there are no medical records indicating that White suffers from such a debilitating condition. Considering the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision to discredit White's subjective complaints of disabling pain and discomfort which requires bed rest for two to three weeks a month.

Because the ALJ's residual functional capacity assessment was proper, the reliance on the Guidelines in determining that White is not disabled was also proper. The ALJ determined that White can perform all of the strength demands of light work, and because the record supports the conclusion that he does not have any non-exertional limitations that significantly affect his abilities, the reliance on the Guidelines was proper. Since the Guidelines were applicable, it was unnecessary to rely on vocational expert testimony. Therefore, White's argument concerning the vocational expert testimony is without merit.

Accordingly, because credible evidentiary choices exist which support the ALJ's decision, the undersigned concludes that substantial evidence supports the non-disabled finding.

14

*Conclusion*

Considering the foregoing, the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**.

Signed at Lafayette, Louisiana, on November 22, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)